UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JENNIFER CABRAL,<br><br>Defendant. | Criminal Action No. 11-224 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION

Pending before the Court are the defendant's Motion to Remove Lien, *see generally* Def.'s Mot. Remove Lien ("Def.'s Mot."), ECF No. 42, and Supplement to Motion to Remove Lien ("Def.'s Suppl."), ECF No. 47. The defendant, who is in compliance with her monthly restitution obligation of $50, seeks removal of a lien placed on real property in Kansas City, Missouri, securing the order of restitution entered in this criminal case. For the reasons set forth below, the defendant's motions are denied.

## I. BACKGROUND

On August 11, 2011, the defendant pleaded guilty to the offense of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. Plea Agreement at 1, ECF No. 6. From October 2006 to March 2010, the defendant "was employed as a payroll manager by Madison Marquette in the company's Washington, D.C. office." Statement of Offense ¶ 1, ECF No. 5. She "was the primary authorized user of Madison Marquette's [Automated Data Processing ("ADP")] payroll system," and "had full access to all aspects" of the system. *Id.* ¶ 3. Beginning in or about early 2007, and until March 2010, the defendant, "without the knowledge or approval of her supervisor," "engaged in a scheme in which she manipulated the data in Madison Marquette's payroll system in multiple ways that resulted in substantial unauthorized

1

increases in her compensation." *Id.* ¶ 4. At the time of the offense, the defendant "lived with her (now ex) partner and their son at a home located in Odenton, Maryland," Def.'s Suppl. Mot. Remove Lien ("Def.'s Suppl.") at 2, ECF No. 47, and, thus, her "scheme caused the money she stole from Madison Marquette [in Washington D.C.] to cross state lines via wire transfers" to the state of Maryland and elsewhere, Statement of Offense ¶ 16. On February 17, 2011, the defendant was interviewed by agents with the Federal Bureau of Investigation, during which interview the defendant "admitted to manipulating the Madison Marquette ADP payroll system . . . for the purpose of stealing money." *Id.* ¶ 17.

On January 11, 2012, following the defendant's plea of guilty, the defendant was sentenced to twenty-four months of incarceration, followed by a three-year period of supervised release. Judgment at 2, 3, ECF No. 34. Pursuant to the Mandatory Victims Restitution Act of 1996 (the "MVRA"), the sentencing Court ordered restitution in the amount of $244,852, providing that "[t]he defendant shall pay the balance of any restitution owed at a rate of no less than $50 each month . . . ." *Id.* at 4, 6. On January 23, 2012, the defendant filed a notice of appeal in the United States Court of Appeals for the District of Columbia Circuit, without stating the precise ground for the appeal, Notice of Appeal, ECF No. 30, which appeal was subsequently dismissed, on June 26, 2012, D.C. Circuit Order, ECF No. 40.

Before self-surrendering to prison, the defendant was permitted to move to Kansas City, Missouri, "to allow [her] then partner to be closer to her family to help with [their] son during [the defendant's] incarceration." Def.'s Mot. at 1.[1] In addition, "[t]o enable [the defendant's] partner to purchase a home in Kansas City [by mortgage], the probation office allowed [the

---

[1] The government has represented that it "has not agreed to any of the facts stated in the letter and is unwilling to accept the proffer of information made by the Defendant, *Pro se*." Gov't's Suppl. Mem. Opp'n Def.'s Letter Constr. Mot. Remove Lien & Resp. Suppl. ("Gov't's Suppl.") at 7, ECF Nos. 49–50.

defendant's] name to be placed on the mortgage paperwork" of that home. Def.'s Suppl. at 2. The defendant's partner purchased a property located on 102nd Street, Kansas City, Missouri. Def.'s Mot. at 1. As a result of the defendant's name being on the mortgage for the Kansas City residence, the government placed a lien on the property "at the local level." Gov't's Opp'n Letter Construed as Mot. Remove Lien ("Gov't's Opp'n") at 1, ECF No. 43.

At the time of the acquisition of the Kansas City residence, the defendant and her partner already owned a home in Odenton, Maryland, which was also subject to a government lien as a result of the defendant's restitution obligation. Def.'s Mot. at 1. After the defendant's release from prison, in September 2014, the defendant sent the government "information showing the [Maryland] property . . . was going to be foreclosed unless [the defendant and her partner] could short sell the unit." *Id.* The government "refused to release the lien absent payment of (approximately) $5,000.00." Def.'s Suppl. at 2. Neither the defendant nor her partner provided that money to the government, and the Maryland property was foreclosed upon. *Id.*

Meanwhile, the "mortgage payments for the Kansas City residence were in arrears." *Id.* The defendant's partner needed to refinance the Kansas City residence, but was unable to do so because of the lien, putting the Kansas City residence at risk of foreclosure. *Id.* In light of this risk, the defendant sent a *pro se* letter, dated April 11, 2016, to the Court asking that the lien on the Kansas City residence be removed. Def.'s Mot. at 1. This letter was construed as a motion to remove the lien when filed on the docket in this action. *See generally* Def.'s Mot.[2] After the government opposed the defendant's motion, *see generally* Gov't's Opp'n, the defendant filed a motion for appointment of counsel, *see generally* Mot. Appt. Counsel, ECF No. 44, which motion was granted, *see* Min. Order, dated June 8, 2016. At the direction of the Court, both

---

[2] On the same day the defendant's letter was filed, her case was reassigned to the undersigned Chief Judge, since the original Judge at sentencing has retired.

3

parties supplemented their original pleadings. *See* Min. Order, dated June 21, 2016; Def,'s Suppl.; Gov't's Suppl. Mem. Opp'n Def.'s Letter Constr. Mot. Remove Lien & Resp. Suppl. ("Gov't's Suppl."), ECF Nos. 49–50. The defendant's motion is now ripe for consideration.

## II. DISCUSSION

The defendant contends that the lien on the Kansas City residence "was illegally placed." Def.'s Suppl. at 7. According to the defendant, under the applicable statutes, "a lien may not be placed immediately upon imposition of an order for restitution, but only when necessary for the 'enforcement of an order of restitution,'" *id.* at 3–4 (quoting 18 U.S.C. § 3613(f)), and this necessity never arose in this case because "Ms. Cabral was current on her monthly payments," *id*. at 4. In response, the government marshals a myriad of counterarguments. Relevant to the disposition of the instant motion, the government contends that the government is entitled to place a lien on the defendant's property and that neither the MVRA nor the Court's inherent authority permit the vacating of the lien in question here. The government is correct regarding its entitlement to a lien and the inappropriateness, on the present record, of this Court vacating or modifying that lien, and, consequently, the defendant's motion is denied.

As support for her position, the defendant relies upon *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015). In that case, "the government served writs of garnishment for two of the defendant's retirement accounts even though the defendant made timely monthly payments as required by the order of restitution," which the court concluded improperly "'usurp[ed] the district court's role in evaluating the defendant's financial conditions and setting a payment schedule.'" Def.'s Suppl. at 4 (quoting *Martinez*, 812 F.3d at 1206). The defendant also relies upon *United States v. Hughes*, 813 F.3d 1007 (D.C. Cir. 2016), in which this Circuit held the government's seizure of a defendant's tax refunds improper where the seizure exceeded "the

4

monthly restitution payment amount[, which] was the maximum the government was authorized to collect," Def.'s Suppl. at 5, and *United States v. Villongco*, 2016 WL 3747508 (D.D.C. July 11, 2016), in which this Court held "there was nothing to distinguish Villongco's case from *Hughes*," Def.'s Suppl. at 5. The defendant contends these cases control the outcome here, characterizing them as involving a "similar issue" or "almost identical situation." *Id.* at 4–5. While the defendant has correctly described the holdings of these cases, the defendant's extension of those holdings to urge removal of a lien is misplaced.

Title 18 provides that "an order of restitution . . . is a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). "The lien arises on the entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or is terminated," *id.*, and becomes "valid" "[u]pon filing of a notice of lien in the manner in which a notice of tax lien would be filed under section 6323(f)(1) and (2) of the Internal Revenue Code of 1986," *id.* § 3613(d). In this way, the statute expressly provides for the existence of a lien upon "entry of judgment" without regard to whether a defendant is in default on his or her restitution obligation.

Notwithstanding the plain text of the statute, the defendant suggests that the government's filing of a notice of a lien in the absence of a default on a payment order is improper. *See* Def.'s Suppl. at 3–5. Noting the statute's characterization of liens as a method of "enforcement" of a restitution order, *id.* § 3613(f), the defendant equates liens with the methods of enforcement used improperly in *Martinez, Hughes*, and *Villongco,* and argues that here, as in those cases, "there was no need for the government to enforce the restitution order because Ms. Cabral was current on her monthly payments." Def.'s Suppl. at 4. Contrary to the defendant's

suggestion, however, all methods of enforcing a restitution order are not created equal. For example, a federal tax lien "is not self-executing." *Kuretski v. Comm'r*, 755 F.3d 929, 932 (D.C. Cir. 2014) (quoting *EC Term of Years Trust v. United States,* 550 U.S. 429, 430 (2007)). Rather, "[a]ffirmative action by the [Internal Revenue Service] is required to enforce collection of the unpaid taxes." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985); *see also Kuretski*, 755 F.3d at 932 (quoting *EC Term of Years Trust,* 550 U.S. at 430–31). By contrast, the enforcement mechanisms at issue in *Martinez*, *Hughes*, and *Villongco* involved actual collection through the seizure of assets, with the result of effectively accelerating restitution payments contrary to the terms of court-ordered installment payments. It is the collection of restitution beyond the amount and schedule ordered by a court, not the mere use of an enforcement mechanism, that "usurp[s] the district court's role" under the MVRA, *Martinez*, 812 F.3d at 1206, to prescribe "the manner in which, and the schedule according to which, the restitution is *to be paid,*" 18 U.S.C. § 3664(f)(2) (emphasis added). Consequently, the government is entitled to a lien on the defendant's property in the amount of the restitution ordered by the sentencing Court, regardless of whether she has defaulted on her restitution obligations.[3]

---

[3] Neither party has submitted a copy of the lien at issue here or specified its terms, but the government's arguments suggest the lien is for the full amount of restitution ordered and for which the defendant is accountable due to her victims' losses, *i.e.*, $244,852. *See* Gov't's Suppl. at 17–20 (asserting that the full amount of restitution ordered, rather than the payment schedule, defines the amount of restitution the government may collect). The government also spills considerable ink arguing that the defendant is not entitled to a modification of the restitution order in her case pursuant to the MVRA, *see* Gov't's Suppl. at 7–12, but the defendant does not press any such entitlement, *see generally* Def.'s Mot; Def.'s Suppl., or directly challenge the lien for failing to reflect the installment payment limitation in the judgment*, see generally id.* Thus, the questions whether the lien at issue conflicts with the schedule of restitution payments in the judgment or whether this Court has authority to direct the government to modify a lien that may conflict with a restitution order are not considered. *Cf. United States v. Perry*, 360 F.3d 519, 536–37 (6th Cir. 2004) (concluding district court lacked authority to vacate a victim's lien pursuant to the MVRA but noting since "[n]o one can get a lien for more than the value of the supporting judgment," where victim's lien exceeded the victim's *pro rata* share of defendant's restitution order, the defendant could move in the state court to modify the lien). Consequently, the government's arguments on these issues need not be addressed.

## III. CONCLUSION

For the foregoing reasons, the defendant's Motion to Remove Lien, ECF No. 42, and Supplement to Motion to Remove Lien, ECF No. 47, are denied. An appropriate Order accompanies this Memorandum Opinion.

Date: June 13, 2017

_____
BERYL A. HOWELL
Chief Judge